CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

JUL 1 4 2009

JOHN F. CORCORAN, CLERK
BY: _____
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Action No. 3:04-cr-00092-3 |
| | ) | |
| | ) | |
| v. | ) | **2255 MEMORANDUM OPINION** |
| | ) | |
| | ) | By: Hon. Norman K. Moon |
| ROBERT JOSEPH MCDONALD. | ) | United States District Judge |

Petitioner Robert Joseph McDonald ("McDonald"), a federal inmate proceeding pro se, brings this action as a motion to vacate, set aside, or correct sentence, pursuant to 28 U.S.C. § 2255. McDonald requests that his guilty plea and sentence be vacated, maintaining that his guilty plea was involuntary and unintelligent because counsel provided ineffective assistance. McDonald further alleges that the court made errors at both the plea hearing and sentencing hearing that entitle McDonald to a new trial. The United States, respondent, filed a motion to dismiss[1], to which McDonald filed a timely response, making the matter ripe for the court's consideration. For the reasons stated herein, the court will grant the government's motion.

## I. Factual and Procedural Background

Robert Joseph McDonald was indicted in this district on December 8, 2004 on one count of conspiring to distribute fifty (50) grams or more of a mixture or substance containing cocaine base, known as "crack" cocaine, in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(A) as well as 21 U.S.C. § 846. The count charging McDonald, Count One, included a special finding that it was reasonably foreseeable to McDonald that the conspiracy intended to distribute more than 1.5 kilograms of cocaine base, pursuant to § 1B1.3(a)(1)(B) of the United States Sentencing Guidelines ("U.S.S.G."). The five-count indictment also charged seven others.

---

[1] As petitioner and respondent attach affidavits and supporting documents, and rely on these documents in their motions, the court must construe and address the parties as seeking summary judgment. Fed. R. Civ. P. 12(b) and 56.

John E. Davidson was appointed to represent McDonald. On July 25, 2005, the court granted Davidson's motion to withdraw as counsel. McDonald concurred in Davidson's removal as counsel. Charles Henter was then appointed as counsel for McDonald.

On August 8, 2005, McDonald pled guilty to Count One of the indictment. McDonald did not reach a plea agreement with the government. Under penalty of perjury, McDonald responded to questions from the court, acknowledging that he had ample time to consult with his attorney, and that he was fully satisfied with counsel's representation and advice. Transcript of Guilty Plea Proceedings; attached as Petitioner's Exhibit N, Dkt. #325, ["Exhibit N"] at 9-11, 14-15.[2] McDonald further acknowledged that he was aware that he was entitled to a trial by a jury, and that if he chose to have a trial the government would have to prove its case with competent evidence beyond a reasonable doubt. Id. at 9-11. The court further asked McDonald if he knew that he would not have to prove his own innocence, but rather that McDonald was presumed innocent. Id. at 10. McDonald again acknowledged that he knew he was considered innocent. Id. The court asked McDonald if he was aware that the government would present witnesses that he, through counsel, could cross-examine. Id. McDonald answered yes. Id. The court then asked McDonald if he was aware that by pleading guilty, McDonald waived his right to a trial as well as the rights to confront witnesses and require the government to put on its case by evidence. Id. at 11. McDonald acknowledged this as well. Id. He also responded that he had discussed the indictment to which he was pleading with his attorney and responded that he understood the charge against him. Id. at 6.

The court asked the Assistant United States Attorney ("AUSA") to summarize the charge against McDonald and two other defendants who were pleading guilty the same day. The AUSA

---

[2]All references to exhibits are references to petitioner's exhibits, attached at Dkt. # 325.

-2-

noted that the defendants were charged in a conspiracy to distribute and possess with intent to distribute fifty (50) grams or more of cocaine base. He stated that the government would have to prove that the defendants named in the indictment agreed with each other and others to commit the criminal offense. Id. at 12.

The government stated on the record that McDonald was close to the supplier of the cocaine base, and facilitated the supply of cocaine with others in the drug conspiracy. Id. at 17. The AUSA additionally stated, "I believe there's also a controlled purchase of cocaine base from Robert McDonald, but not, Your Honor, from Mr. Timmons." Id. McDonald's attorney stated that, "we [the defense] have no additions and we believe that would be the evidence against Mr. McDonald." Id. at 18. At the close of the plea colloquy, McDonald acknowledged verbally and signed a guilty plea form to the effect that his guilty plea was made knowingly and voluntarily and without threat of any kind of promises other than those disclosed in open court. Id. at 19-20.

On November 1, 2005, McDonald was sentenced to 235 months in prison, supervised release of five years, and a special assessment of $100. At sentencing, petitioner was directed to take part in a substance abuse treatment program. The court entered judgment on November 4, 2005. McDonald, still represented by counsel Henter, appealed his sentence to the Fourth Circuit, challenging the presumption of reasonableness as to the sentencing guidelines and the reasonableness of the sentence. The Fourth Circuit affirmed McDonald's sentence, finding that the district court considered sentencing factors pursuant to 18 U.S.C.A. § 3553(a) and that the sentence imposed was reasonable. United States v. McDonald, 191 F.App'x 224 (4th Cir. 2006) (unpublished), cert. denied, 127 S.Ct. 3051 (2007).

On June 23, 2008, petitioner's sentence was modified pursuant to Amendment 706 to the United States Sentencing Guidelines. McDonald's sentence was reduced from 235 to 188 months.

-3-

On June 30, 2008, petitioner filed the instant Motion To Vacate. The government responded and filed a Motion to Dismiss on October 28, 2008. Petitioner replied on November 21, 2008.

McDonald's Motion raises the following grounds:

(A)     that his guilty plea was involuntary and unintelligent because it was induced by ineffective assistance of counsel, including the assertion by his counsel that the government had caught him in a controlled buy, and but for counsel's faulty advice, McDonald would not have plead guilty;

(B)     that petitioner's guilty plea was involuntary and unintelligent due to errors in the plea colloquy;

(C)     that petitioner's constitutional rights were violated because he did not receive a jury trial and because no jury determined the amount of cocaine base at issue;

(D)     that counsel gave ineffective assistance at sentencing; and

(E)     that counsel was ineffective on appeal.

Each ground is considered separately below.

## II. Analysis

To state a claim for relief under § 2255, a petitioner must show one of the following occurred: (1) his or her sentence was "imposed in violation of the Constitution or laws of the United States"; (2) "or that the court was without jurisdiction to impose such a sentence"; or (3) that "the sentence was in excess of the maximum authorized by law"; or (4) "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). In a § 2255 motion, the defendant bears the burden of proving grounds for a collateral attack by a preponderance of the evidence. Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958) (per curiam). A court may rule on the basis of the filings if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . ." 28 U.S.C.A. § 2255.

Because both parties rely on materials outside of the record, the court construes their

-4-

motions as cross-motions for summary judgment. A motion for summary judgment may be granted when "there is no genuine issue as to any material fact" and "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-25 (1986). The court must view the facts and the inferences drawn in the light most favorable to the non-moving party. Ballinger v. North Carolina Agric. Extension Serv., 815 F.2d 1001, 1004 (4th Cir. 1987). While viewing the facts in such a manner, courts look to the affidavits or other specific facts to determine whether a triable issue exists. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual basis." Celotex, 477 U.S. at 327.

### A. Ineffective Assistance of Counsel & Voluntariness of McDonald's Plea

McDonald argues that he received ineffective assistance from his counsel, rendering his guilty plea involuntary. At the plea colloquy, McDonald pled guilty to Count One of the indictment, the only count against him. Exhibit N at 18. He stated, under oath at the plea hearing, that he pled guilty and that his plea was voluntary and intelligent. Id. at 20. Furthermore, McDonald freely confessed his guilt in an interview with the United States Probation Office, as is evidenced in his Pre-sentence Report ("PSR"). McDonald now claims that though he had sold drugs in the past, he was not guilty of participation in the particular conspiracy named in the indictment. He claims that he pled guilty because he believed he was likely to be convicted of the charge in the indictment.

Petitioner states that if any one of the following alleged errors by counsel had not occurred, he would not have pled guilty: (1) statement that McDonald had been caught in a controlled drug buy; (2) failure to present a defense strategy to McDonald; (3) failure to inform McDonald of the

mandatory minimum supervised release period; (4) failure to negotiate a plea deal; (5) failure to explain to McDonald the nature and elements of the offense and of the right to jury determination as to drug amount and conspiracy; and (6) failure to subject government evidence to adversarial testing. Additionally, McDonald claims (7) that if these factors do not individually entitle him to relief, that they do cumulatively entitle him to relief as ineffective assistance of counsel rendered his plea involuntary and unintelligent. Taken both individually and cumulatively, McDonald's claims fail to establish that there is a reasonable probability that he would have gone to trial but for counsel's alleged errors.

To prove that counsel's representation was so defective as to require reversal of the conviction or sentence, McDonald must meet a two-pronged standard. Strickland v. Washington, 466 U.S. 668, 687 (1984). First, he must show that "counsel's representation fell below an objective standard of reasonableness," considering circumstances as they existed at the time of the representation. Id. at 688. In making such a case, a defendant must overcome a strong presumption that counsel's performance was within the range of competence demanded from attorneys defending criminal cases. Id. at 689. Second, he must show prejudice, i.e., "a reasonable probability" that but for counsel's errors the outcome would have been different. Id. at 694-95. A defendant who argues ineffective assistance of counsel in connection to a guilty plea must meet a heightened burden, demonstrating that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)); see Beck v. Angelone, 261 F.3d 377, 394 (4th Cir. 2001).

Finally, a guilty plea is constitutionally valid when:

the guilty plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant. In applying this standard, courts look to the

-6-

> totality of the circumstances surrounding the guilty plea, granting the defendant's solemn declaration of guilt a presumption of truthfulness. The Constitution requires the circumstances to reflect that the defendant was informed of all of the direct consequences of his plea. A plea may be involuntary if the defendant does not understand the nature of the constitutional rights he is waiving, or unintelligent if the defendant does not understand the charges against him.

Beck v. Angelone, 261 F.3d 377, 394 (4th Cir. 2001) (citations omitted); see Burket v. Angelone, 208 F.3d 172, 189-90 (4th Cir. 2000).

"Absent clear and convincing evidence to the contrary," a defendant "is bound by the representations he made during the plea colloquy." Id. at 191. Such statements "present 'a formidable barrier in any subsequent collateral proceedings.'" United States v. Lemaster, 403 F.3d 216, 222 (4th Cir. 2005) (quoting United States v. White, 366 F.3d 291, 295-96 (4th Cir. 2004) (internal quotations omitted)).

### 1. Alleged Statements Regarding Controlled Buy

First, with regard to claim (1), McDonald argues that but for Henter's alleged statement that McDonald had been caught in a controlled drug buy, McDonald would not have pled guilty. The parties dispute whether counsel informed McDonald that he had been caught in a controlled buy. Additionally, the government brief does not take a position on whether McDonald was caught in a controlled buy. The record reveals that counsel sent a letter to McDonald explaining incriminating evidence against McDonald. See Petitioner's Exhibit B. Though the letter explains much of the evidence against McDonald, it does not reference any controlled buy. Id. McDonald is correct that the AUSA did reference a controlled buy at the plea hearing as part of the factual basis supporting McDonald's guilty plea. Exhibit N at 17. The court need not determine whether McDonald's counsel told him that the government had evidence that he had been caught in a controlled buy and whether Henter's performance was unreasonable in this regard, because

-7-

McDonald cannot establish the prejudice prong of Strickland.

Even without the alleged controlled buy, as evidenced by McDonald's own exhibits, McDonald faced a mountain of incriminating evidence that would reasonably cause a defendant to plead guilty. Counsel sent McDonald a letter before McDonald decided to plead guilty, in which counsel laid out some of the government's likely case against him. Exhibit B. Counsel advised McDonald that an individual said that she had observed McDonald producing drugs at a co-conspirators house, that a witness had seen McDonald be hit and shot by co-conspirators, that McDonald's brother (also a co-conspirator) told police that the shooting was over a $12,000 drug debt, and that an additional individual had stated that McDonald worked for a co-conspirator and that both McDonald and his brother sold drugs from their door. Id. Thus, McDonald faced a high risk of being found guilty even without consideration of the evidence of a controlled buy.

According to the PSR, petitioner had a criminal history category of III. McDonald's base offense level was thirty-eight. By pleading guilty, McDonald gained the potential of having his base offense level lowered for acceptance of responsibility, and thus being eligible for a lower sentence. After pleading guilty, McDonald did in fact benefit, receiving a two point reduction in the offense level. This lowered his offense level from thirty-eight to thirty-six, and thereby lowered the applicable advisory sentencing guidelines range from 292-365 to 235-293 months.[3] By pleading guilty, McDonald was able to manage his risk of receiving a lengthy prison sentence and he actually benefitted from his plea when he received a sentence of 235 months, at the bottom of the new guidelines range. Thus, given the overwhelming evidence against McDonald even without the controlled buy, and the benefit to McDonald from pleading guilty, McDonald cannot

---

[3]McDonald had to decide whether to plead guilty prior to the United States Sentencing Commission amending the sentencing guidelines to reduce the amount of time available for cocaine base (crack) offenses. McDonald received a subsequent decrease in his sentence after it was lowered.

-8-

show that there is a reasonably probability that he would not have pled guilty if not told he had been caught in a controlled buy.

McDonald's additional claim that the alleged misinformation regarding the controlled buy rendered his plea involuntary and unintelligent fails. McDonald premises his argument that his plea was involuntary and unintelligent on an unsupportably categorical reading of Hammond v. United States, 528 F.2d 15 (4th Cir. 1975), which predates Strickland. McDonald argues that Hammond stands for the proposition that where counsel gives misinformation, a plea is not intelligently made. McDonald errs in stating that any mistake may render a plea involuntary and unintelligent. Rather, the Fourth Circuit concluded that not "every item of misinformation which counsel may impart vitiates the voluntariness of a plea." Id. at 18. "If counsel was ineffective, it follows that [defendant's] pleas were involuntary." Id. Having concluded that McDonald's counsel was not ineffective, McDonald is deprived of his evidence of involuntariness. Indeed, given the evidence against him (even absent controlled buy evidence), McDonald faced weighty risks if he went to trial. He was able to weigh the risks attendant in going to trial and as such his plea was not involuntary or unintelligible.

*2. Alleged Failure to Investigate Defenses*

McDonald next argues that he would not have pled guilty had his counsel adequately investigated the case against him and identified a defense strategy undermining the government's likely witnesses with impeachment information. McDonald argues that if he had been presented with a potential strategy for fighting the evidence against him, and if counsel had told him that there was no controlled buy, there is a reasonable probability that he would not have pled guilty. Specifically, McDonald claims that counsel failed to read the whole file, investigate impeachment information and exculpatory evidence and witnesses, thus failing to create and describe a defense

-9-

strategy.

Ineffective assistance of counsel claims are evaluated based on the reasonableness of "'counsel's perspective at the time of the alleged error and in light of all the circumstances and the standard of review is highly deferential.'" Hooper, 845 F.2d at 476 (quoting Kimmelman v. Morrison, 477 U.S. 365, 381(1986)). "Effective assistance includes the 'duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.'" Id. at 474 (quoting Strickland, 466 U.S. at 691.).

Henter assumed representation after McDonald's prior counsel asked to be removed. (McDonald concurred in the removal of prior counsel.) The letters from Henter that McDonald attached to the record contradict, rather than support, McDonald's arguments. For example, in a letter attached as Exhibit B, Henter specifically states that he has reviewed information in the United States Attorney's file with a few exceptions that counsel intended to obtain shortly. Henter further reminded McDonald that some of the evidence against McDonald could remain secret until very shortly before the trial. Counsel formulated a strategy and worked quickly in an attempt to get an advantageous deal for McDonald. Counsel faced additional time pressure, as evidenced by the letters attached by McDonald, because the other defendants in the drug conspiracy were pleading guilty. Exhibit M. As such, the incentive for the government to work with McDonald, or for McDonald to attempt to gain benefits for acceptance of responsibility by pleading guilty, was likely to dissipate with additional delay. In short, counsel both made reasonable investigations and made reasonable decisions - namely that McDonald was well advised to plead guilty - which rendered additional investigation unnecessary.

McDonald also argues that Henter's investigation was unreasonable because Henter failed to interview potential government witnesses. As is noted by the government, most of the

witnesses were co-defendants represented by counsel and thus unavailable for interview. However, at the point at which Henter had investigated the evidence, determined that a guilty plea was an advantageous strategy, and McDonald had agreed to this strategy, Henter was not required to undertake the time consuming action of interviewing additional witnesses. Hooper, 845 F.2d at 474. In a constricted period of time, Henter reviewed relevant evidence and formulated a strategy to try to lessen McDonald's risk of jail time. McDonald cannot second guess his attorney's strategy using hindsight - particularly after having benefitted from receiving acceptance of responsibility.[4] Thus, counsel did not act unreasonably. Having concluded that Henter did not act unreasonably in investigating the case against McDonald, the court need not reach the prejudice prong of Strickland.

### 3. Alleged Failure to Advise of Mandatory Supervised Release

McDonald claims that counsel failed to tell McDonald that he could receive five years of supervised release. This claim is considered in conjunction with McDonald's complaint that the court did not inform him of the mandatory supervised release term of five years and the nature of supervised release at plea colloquy. See Section II.B infra. McDonald argues that he would not have pled guilty had he known that he would receive a mandatory supervised release term of five (5) years. As with McDonald's other allegations, the parties dispute the underlying facts, here whether Henter informed McDonald that he might receive supervised

---

[4]McDonald claims that various portions of the proffers of various potential government witnesses yield impeachment evidence. However, many of the contradictions he argues exist are not apparent from the attached record. For example, he argues that evidence of a drug sale at a concert was subject to attack because "[i]f counsel Henter had investigated, he would have found solid impeachment evidence because Massie was in jail in NY during 2003 and could not have been present in Virginia to sell drugs or on the concert date." Petitioner's Brief at 10, Dkt. # 326. There is no evidence regarding Massie in McDonald's attachments, nor to suggest that McDonald's scatter-shot arguments would have presented a real defense. However, even if Henter had failed to learn some impeachment evidence, McDonald's argument is misplaced as Henter was not required to formulate a complete trial defense before counseling McDonald about his guilty plea. Rather, counsel needed to make a reasonable investigation of the record in deciding whether to recommend a guilty plea.

release as part of his sentence.

"A district court's failure to inform a defendant that his sentence will incorporate a term of supervised release and its further failure to explain the significance of supervised release is error. Failure to comply with the dictates of Rule 11 is harmless, however, if the failure does not violate a defendant's substantial rights." United States v. Thorne, 153 F.3d 130 (4th Cir. 1998) (citations omitted). The Fourth Circuit has "generally held that failure to discuss the nature of supervised release is harmless error if the combined sentence of incarceration and supervised release actually received by the defendant is less than the maximum term he was told he could receive." United States v. Good, 25 F.3d 218, 219 (4th Cir. 1994). See, e.g., Moore v. United States, 592 F.2d 753 (4th Cir. 1979); United States v. Robinson, 215 F.App'x 302 (4th Cir. 2007) (per curiam). On collateral review, a defendant must show an error that resulted in prejudice rising to the level of "constitutional or jurisdictional dimensions." United States v. White, 572 F.2d 1007, 1009 (4th Cir. 1978). See discussion at Section II.B infra.

Taking the facts in the light most favorable to McDonald, McDonald's claim fails as matter of law because McDonald was warned that he might receive a sentence longer than his actual sentence, plus supervised release. At the plea hearing, McDonald was informed that he could receive the statutory maximum sentence of life in prison. Exhibit N at 12. McDonald acknowledged to the court that he understood the applicable sentencing range and that he had discussed the sentencing guidelines with his attorney. Id. He additionally affirmed that he understood that he might receive a sentence that was more severe than expected, but would still be bound by his plea. Id. McDonald additionally signed a plea form that stated that he had been advised on the maximum sentence by the court. Id. at 20. Prior to McDonald's re-

-12-

sentencing based on Amendment 706, McDonald received a sentence of 235 months. Taking

into consideration the five years of supervised release, the total term of McDonald's sentence

was 295 months. As such, McDonald was not prejudiced by any alleged unreasonable conduct

of counsel, and any error of the court to comply with Rule 11 of the Federal Rule of Criminal

Procedure is harmless. Thus McDonald's plea is not rendered involuntary or unintelligent.[5]

### 4. Alleged Failure to Negotiate a Plea Deal

McDonald further argues that his counsel was ineffective for failing to negotiate a plea

bargain. Counsel competence in the stages prior to the entrance of a guilty plea, including

stages at which a plea bargain might have been negotiated, are subject to the Strickland

reasonableness and prejudice standards. Field v. Maryland, 956 F.2d 1290, 1296 n. 17 (4th

Cir. 1992). However, "[a] defendant has no constitutional right to a plea bargain." Id. at 1297

n. 19. An attorney's decision not to initiate plea bargaining is strategy, and an attorney is not

required to seek plea bargains that an attorney reasonably believes that the prosecution will

reject. See Brown v. Doe, 2 F.3d 1236, 1246 (2d Cir. 1993); Beans v. Black, 757 F.2d 933,

936-37 (8th Cir. 1985); see also Newman v. Vasbinder, 259 F.App'x 851, 854 (6th Cir. 2008).

Records submitted by McDonald show that counsel requested that McDonald cooperate

with the government so that the government would be incentivized to offer McDonald a better

deal. See Exhibit M. Thus, Henter clearly made inquiries and investigations on behalf of

---

[5]McDonald argues on the basis of United States v. Thorne that his plea is involuntary and unintelligent. 153 F.3d 130 (4th Cir. 1998). In Thorne, the court informed Thorne that he could face a statutory maximum of life in jail if he had a criminal record. Id. at 133. The Fourth Circuit found that Thorne's plea was involuntary and unintelligent because Thorne knew that he had no prior record and as such was not put on notice by that maximum. Id. at133. The Fourth Circuit determined that Thorne was unable to "evaluate with eyes open the direct attendant risks of accepting criminal responsibility" because he was not informed of the maximum sentence to which he was logically subject. Id. (quoting United States v. Padilla, 23 F.3d 1220, 1222 (7th Cir. 1994)). As such, Thorne received a longer sentence than he was put on notice that he might receive. Id. at 133-34. McDonald's case is distinguishable from Thorne because McDonald was not on notice that the life sentence was a legal impossibility.

McDonald and met the standard of reasonableness required for conduct of counsel. That a plea bargain did not ultimately result does not prejudice McDonald in a constitutionally cognizable way. Thus, McDonald's argument for ineffective assistance of counsel fails as to this claim.

### 5. Alleged Failure to Explain Nature and Elements of Offense Including Right to a Jury Determination of Drug Amount

McDonald claims that counsel failed to advise him of the nature and elements of the offenses charged in the indictment, thus rendering his plea involuntary and unintelligent. Additionally, McDonald claims that counsel led McDonald to believe that the drug amount at issue would be determined by the judge, and that McDonald was guilty if he merely observed illegal acts and was present when illegal acts took place. In this vein, McDonald further claims that his counsel failed to monitor Fourth Circuit case law, thus missing what McDonald alleges is a new procedural right in United States v. Collins, 415 F.3d 304, 314 (4th Cir. 2005), which was handed down shortly before McDonald pled guilty. The parties dispute the facts regarding what information counsel gave McDonald. However, the court need not reach that dispute in denying McDonald's claim, because of McDonald's statements made under oath at the plea hearing.

A plea is voluntary and intelligent when a defendant "receives real notice of the true nature of the charge against him . . . ." Bousely v. United States, 523 U.S. 614, 618 (1998) (internal quotation omitted). If a defendant has received a copy of his or her indictment prior to pleading guilty, there is a presumption that the defendant has been "informed of the nature of the charge against him." Id. at 618 (citations omitted).

Additionally, the plea colloquy can remedy misunderstandings between attorney and client: "'if the information given by the court at the Rule 11 hearing corrects or clarifies the earlier erroneous information given by the defendant's attorney and the defendant admits to understanding the court's advice, the criminal justice system must be able to rely on the

-14-

subsequent dialogue between the court and defendant.'" United States v. Foster, 68 F.3d 86, 88 (4th Cir. 1995) (quoting United States v. Craig, 985 F.2d 175, 179-80 (4th Cir. 1993)). As previously noted, a defendant's statements under oath that he or she understands the court's advice at plea hearing are not to be normally set aside.

In Collins, the Fourth Circuit held that a jury must determine the amount of drugs attributable to defendant in order for defendant to be subject to an enhanced sentence based on a drug weight under 21 U.S.C. § 841(b). 415 F.3d at 314. However, "[g]uilt of the substantive offense defined in § 841(a) is not dependent upon a determination of the amount or type of narcotics distributed." Collins, 415 F.3d at 314. Indeed, instructing a jury that drug weight is an element of the offense for conviction under 21 U.S.C. § 841(a) is plain error, as set forth in 21 U.S.C. § 841(b)(1)(C). See United States v. Reid, 523 F.3d 310, 315-16 (4th Cir. 2008). Absent a jury determination as to drug weight, a defendant may still be sentenced to the maximum term for violation of 21 U.S.C. § 841(a), twenty years imprisonment. United States v. Reid, 523 F.3d 310, 315-17 (4th Cir. 2008); United States v. Brooks, 524 F.3d 549, 561 (4th Cir. 2008).

McDonald's claim for ineffective assistance of counsel fails because any alleged failure by counsel to inform McDonald of his jury rights was remedied by the court at the plea hearing. On August 8, 2005, McDonald was sworn under penalty of perjury before the court at his plea hearing. Exhibit N. He took part in the following dialogue with the court:

| Court: | Have you received a copy of the indictment? |
|---|---|
| Defendant: | Yes. |
| Court: | Have you had ample time to consult with your attorney? |
| Defendant: | Yes. |

Id. at 6 ("Defendant Robert McDonald" modified to "Defendant"). The court additionally engaged

-15-

in the following exchange with McDonald.

> Court: First, do you understand that you are now under oath; and if you answer any of my questions falsely, your answers may later be used against you in another prosecution for perjury or making a false statement?
>
> . . .
>
> Defendant: Yes.
>
> . . .
>
> Court: Okay. Are you fully satisfied with the counsel, representation, and advice given you in this case by your attorney?
>
> . . .
>
> Defendant: Yes.
>
> . . .
>
> Court: Okay. Do you understand that, under the Constitution and laws of the United States, you are entitled to a trial by jury on **the charges contained in the indictment**?
>
> Defendant: Yes.

Id. at 9 ("Defendant Robert McDonald" modified to "Defendant") (emphasis added). The Court

re-emphasized the point, asking:

> [d]o you understand at that trial you would be presumed innocent, the government would be required to prove you guilty by competent evidence beyond a reasonable doubt, and you would not have to prove that you were innocent?

Id. at 10. McDonald responded "Yes." Id. McDonald further responded that he understood that

he was waiving his right to trial. Id. at 11. He was asked if he still wished to plead guilty, to

which he responded yes. Id. McDonald then responded to the court that he had discussed the

charge in the indictment and that he understood the charge. Id. The AUSA then described the

charge that McDonald would face, including noting that McDonald was charged with being part

-16-

of a "conspiracy to distribute and possess with intent to distribute 50 grams or more of cocaine base." Id. at 12. The court asked again, "Do each of you understand, then, what the government would have to prove beyond a reasonable doubt before you could be found guilty?" Id. at 13. McDonald responded "Yes." Id.

McDonald has not made any showing that justifies releasing him from his former statements under oath. McDonald was informed of his rights. He stated that he understood the rights that he waived. He was informed as to the benefits and risks associated with pleading guilty; thus, his guilty plea was knowing, intelligent and voluntary. Thus, there is no error because McDonald was informed that a jury would need to find his guilt or innocence as to whether the conspiracy involved fifty (50) grams of cocaine base.

Additionally, McDonald cannot demonstrate that he suffered any prejudice as there is no reasonable probability that McDonald would not have pled guilty given additional information regarding jury determination of drug amounts. Given that the jury need not make a determination as to a drug amount for a baseline conviction under 21 U.S.C. § 841(a), the incriminating evidence against McDonald discussed in Section II.A.1, supra, and the possibility for a reduction in sentence for acceptance of responsibility, there is no reasonable probability that McDonald would not have pled guilty. Additionally, there was a great deal of evidence linking McDonald to a high drug amount. As the government stated at the sentencing hearing on November 1, 2005, McDonald had a relationship with the drug supplier. Exhibit Q at 11. McDonald brought large quantities of crack from New York and from North Carolina into the Charlottesville area. Id. at 12. The government thus possessed a great deal of evidence which could allow the jury to conclude that the scope and drug amounts involved in the conspiracy were foreseeable and attributable to McDonald. Given this risk, there is no reasonable possibility that McDonald would

-17-

not have pled guilty simply on the hope that the jury would fail to find drug amounts attributable to him.

Finally, McDonald was sentenced to 235 months in prison prior to the reduction for the crack amendment. Thus, assuming _arguendo_ that there was some error in notice regarding jury rights, McDonald's sentence is still less than twenty years, the statutory range for convictions pursuant to 21 U.S.C. § 841(b)(1)(C). Thus, McDonald was not subjected to an unlawfully high sentence. For all of these reasons, McDonald's claim (5) fails.

### 6. Per se Ineffective Assistance of Counsel

McDonald argues that his counsel was _per se_ ineffective for failing to submit the government's case to adversarial testing. A defendant suffers _per se_ ineffective assistance of counsel if he or she was (1) deprived of counsel at a critical stage of proceedings; or (2) constructively denied assistance of counsel because counsel failed to submit the government's case to adversarial testing; or (3) if "the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate . . . ." Glover v. Miro, 262 F.3d 268, 276-77 (4th Cir. 2001) (citing & quoting United States v. Cronic, 466 U.S. 648, 659-60 (1984)).

McDonald was represented by counsel. He was not constructively deprived of counsel. As is discussed in sections II.A. 1 & 2, _supra_, Henter worked diligently on McDonald's behalf, in spite of receiving little useful information from McDonald himself. Moreover, McDonald testified at his plea hearing that was fully satisfied with the advice and representation of Henter. Finally, this is not a situation in which a competent lawyer could not provide effective assistance of counsel. Rather, McDonald received effective assistance of counsel. Thus, McDonald's claim for _per se_ ineffective assistance of counsel fails.

-18-

## 7. *Alleged Cumulative Prejudice*

McDonald argues that the alleged errors of his counsel cumulatively caused him prejudice. The court need consider McDonald's claims of cumulative prejudice only as to those grounds for which the court has not reached a determination on the reasonableness of counsel's conduct. United States v. Russell, 34 F.App'x 927 (4th Cir. 2002). This is because if counsel's action is not independently erroneous, i.e. if it is not unreasonable in of itself, it cannot cumulatively form error. Fisher v. Angelone, 163 F.3d 835, 852-53 (4th Cir. 1998).

Thus the court must consider whether the allegations in the following claims cumulatively resulted in prejudice to McDonald: claim 1, that McDonald was erroneously told there was a controlled buy; claim 3, that McDonald was not told he faced supervised release; and claim 5, that McDonald was not informed of the relevant nature and elements of the crime or his right to a jury determination on drug amount.

These alleged errors do not cumulatively establish ineffective assistance of counsel warranting relief because they do not cumulatively establish prejudice. McDonald cannot establish that there is a reasonable probability that he would not have pled guilty had he not been informed that there was a drug buy because of the incriminating evidence against him. With regard to claims 3 and 5, McDonald cannot establish prejudice because any harm was remedied by the court. Indeed, McDonald affirmed at the plea hearing that he knowingly and voluntarily made his plea. McDonald has submitted nothing to justify releasing him from his statements under oath. Further, McDonald's arguments do not establish that he was subjected to an unlawful sentence. Thus, McDonald was sufficiently aware of the risks of going to trial, as well as the consequences of pleading guilty. The government's Motion To Dismiss, here viewed as a Motion For Summary Judgment, is granted.

Case 3:04-cr-00092-NKM   Document 378   Filed 07/14/09   Page 19 of 32   Pageid#: 1368

## B. Alleged Errors in Plea Colloquy

Next, petitioner argues that his plea was involuntary and unintelligible due to the following alleged errors in the plea colloquy: (1) the failure of the court to inform McDonald of the term of supervised release; (2) that the court did not tell McDonald that he had the right to have a jury determine the amount of drugs in the conspiracy which were attributable to McDonald; (3) that the court did not determine whether McDonald understood the nature and elements of the offense charged; (4) that the court did not place all elements of the crimes charged on record, such as the special finding from the indictment would have to be found beyond a reasonable doubt; (5) false testimony from the AUSA that McDonald had been caught in a controlled buy; (6) the court did not put the factual basis for each part of the offense on the record; and (7) that McDonald did not admit to conduct underlying the actual offenses.

Federal Rule of Criminal Procedure 11(b) provides that the "court must inform the defendant of, and determine that the defendant understands" various rights that the defendant waives by pleading guilty. Rule 11(b). "To satisfy the requirements of Rule 11 and to meet constitutional requirements it is not necessary for the court to spell out for the defendant every possible right provided by the Constitution for the protection of a person charged with crime." United States v. Ready, 460 F.2d 1238, 1239 (4th Cir. 1972). Reviews of the adequacy of Rule 11 colloquies should "accord deference to the trial court's decision as to how best to conduct the mandated colloquy with the defendant. The manner of ensuring that the defendant is properly informed is committed to the good judgment of the district court . . . ." United States v. Defusco, 949 F.2d 114, 116 (4th Cir. 1991) (internal quotation omitted). Moreover, "" collateral relief is not available when all that is shown is a failure to comply with the formal requirements' of a rule of criminal procedure in the absence of any indication that the defendant was prejudiced by the

-20-

asserted technical error.'" <u>United States v. White</u>, 572 F.2d at 1009 (quoting <u>Davis v. United States</u>, 417 U.S. 333, 346 (1974) (quoting <u>Hill v. United States</u>, 368 U.S. 424, 429 (1962)). Rather, on collateral review the court must determine whether there was "mistake of constitutional or jurisdictional dimensions," which is "'a fundamental defect which inherently results in a complete miscarriage of justice.'" <u>Id</u>.

### *1. Alleged Lack of Notice As to Supervised Release*

McDonald argues that his plea was involuntary and unintelligent because he was not informed at the plea hearing about supervised release. McDonald's argument fails, as is explained in Section II.A.3, <u>supra</u>.

### *2. Alleged Failure to Inform of Right to Jury Determination as to Drug Amount*

McDonald next argues that his waiver of jury trial rights was not knowing and intelligent because he was not informed at the plea hearing that a jury needed to find the drug amounts attributable to him as an individual.

As is explained in Section II.A.5, <u>supra</u>, McDonald was informed on the record that he had a right to a jury, a right that he acknowledged. Thus, McDonald was fully informed of his rights. As such, there was no deficit of disclosure to McDonald. Indeed, McDonald admits in the affidavit attached to his reply, that Henter told him he was entitled to a jury determination as to every element of the conspiracy. McDonald Reply Affidavit, attached to Dkt. # 363, at 2. To the degree that McDonald complains that he did not understand the information he was presented, he is bound by his affirmations on the record at the time of his guilty plea that he had fully discussed the case with his attorney and that he had no questions.[6]

---

[6]McDonald argues that the court should have specifically advised him that he was entitled to a jury verdict on the drug amount. Rule 11 includes no such requirement. Additionally, McDonald's reliance on <u>Libretti v.</u>
(continued...)

Case 3:04-cr-00092-NKM   Document 378   Filed 07/14/09   Page 21 of 32   Pageid#: 1370

Additionally, as is explained in Section II.A.6, <u>supra</u>, McDonald was not prejudiced as to any lack of disclosure regarding the requirement that a jury determine drug amounts in order to sentence a defendant on the basis of the drug amounts.[7] There is no reasonable probability that McDonald would not have pled guilty given the disclosure he received and the evidence against McDonald. Further, McDonald's sentence falls within the statutory range for a conviction under 21 U.S.C. § 841(a) without any enhancements for drug amount. Thus there is no harm rising to the level of constitutional or jurisdictional error, and thus no harm cognizable on collateral review.

### 3. Alleged Failure to Determine that Plea was Knowing and Intelligent

McDonald next argues that the court erred by failing to determine that his plea was knowing and voluntary. He particularly argues that he was prejudiced because no mention of the special finding as to Count 1 was mentioned on the record. As is explained in Section II.A.5, <u>supra</u>, McDonald's claim fails because the record clearly shows that the court confirmed that McDonald had received the indictment. McDonald noted that he had discussed the indictment, which included the special finding as to Count One, with his counsel. McDonald further stated on the record that he understood the charge against him.

Additionally, McDonald's original sentence fell within the statutory range for a conviction under 21 U.S.C. § 841(a) without any enhancement as to drug amount. Thus,

---

[6](...continued)

<u>United States</u>, 516 U.S. 29 (1995) is misplaced; <u>Libretti</u> does not stand for the proposition that the court must specifically advise of the jury right as to every element of substantive criminal rights. Rather, it stands for the proposition that the statutory right to trial for civil forfeiture does not raise Rule 11 concerns.

[7]McDonald appears to misunderstand this requirement in his brief, thus overestimating any potential prejudice to him. McDonald appears to believe that he could have been acquitted entirely had the jury not found that the fifty grams of cocaine base charged in the indictment been attributable to him. In fact, as is discussed, McDonald could still have been convicted and sentenced without that particular finding.

McDonald cannot demonstrate any mistake as to constitutional or jurisdictional dimensions and his claim for collateral relief fails.

*4. Alleged Government Misconduct*

McDonald next argues that the government engaged in misconduct when the AUSA stated on the record that McDonald had been implicated in a controlled buy. In this iteration, this claim does not appear to be an ineffective assistance of counsel claim, but rather is raised as pure error. Additionally, McDonald does not appear to have raised a claim of government misconduct on direct appeal.

A collateral attack under § 2255 may not substitute for an appeal. Claims regarding trial errors that could have been, but were not raised on direct appeal are barred from review under § 2255, unless the defendant shows cause for the default and actual prejudice resulting from such errors, or demonstrates that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack. See United States v. Mikalajunas, 186 F.3d 490, 492-93 (4th Cir. 1999). However, the government must generally raise procedural default to vindicate its interest in the finality of criminal judgments. United States v. Metzger, 3 F.3d 756, 757-58 (4th Cir. 1993) (reviewing issue not raised on direct appeal on merits after government failed to argue procedural default). When the government fails to raise procedural default, courts may raise procedural default sua sponte if the interests of "'judicial efficiency, conservation of scarce judicial resources, and orderly and prompt administration of justice' militate against . . . addressing on the merits [the potentially defaulted issue]." Id. at 758 (quoting Hines v. United States, 971 F.2d 506, 509 (10th Cir. 1992)). See e.g. United States v. Linder, 552 F.3d 391, 397 n.2 (4th Cir. 2009) (applying procedural default in spite of government failure to raise default because of "unique circumstances" of direct appeal in spite

-23-

of appeal waiver), reh'g. denied & reh'g. en banc denied, 561 F.3d 339 (4th Cir. 2009). In this case, the government did not raise procedural default as to this claim. Because no special interest militates in favor of barring consideration, the court considers McDonald's allegation.

"To prevail on a claim of prosecutorial misconduct, a defendant must show (1) that the prosecutor's remarks and conduct were, in fact, improper and (2) that such remarks or conduct prejudiced the defendant . . . ." United States v. Allen, 491 F.3d 178, 191 (4th Cir. 2007).

The government takes no position on whether the statement of the AUSA was accurate, and McDonald himself concedes that any mistake by the AUSA was not malicious. McDonald Reply Affidavit, attached to Dkt. # 363, at 5.

Moreover, McDonald cannot show any prejudice as to his case, given that the exhibits submitted by McDonald demonstrate more than sufficient evidence to lead McDonald to plead guilty and to support McDonald's guilty plea. See Section II.A.1, supra; Section II.B.5, infra. Thus, McDonald's claim of prosecutorial misconduct fails.

### 5. Alleged Insufficient Factual Basis for Plea

McDonald next argues that the government did not present sufficient evidence to support a guilty plea if the statement by the AUSA that there is a controlled buy is not countenanced. Before accepting a plea of guilty, "the court must determine that there is a factual basis for the plea." Federal Rule of Criminal Procedure 11(b)(3). A district court "need only be subjectively satisfied that there is a sufficient factual basis for a conclusion that the defendant committed all of the elements of the offense." United States v. Mitchell, 104 F.3d 649, 652 (4th Cir. 1997). In making such a determination, the trial court "possesses wide discretion." Id.

Even without evidence of the alleged controlled buy, the record contains sufficient

evidence to support McDonald's guilty plea. The AUSA stated that the conspiracy brought cocaine base from New York and redistributed it in and around the Prospect area of Charlottesville, Virginia. Exhibit N at 16. The government noted that each of the three defendants who pled guilty at that plea hearing, including McDonald, played a different role in the conspiracy. Id. McDonald was close to the New York supplier of cocaine base for a period of time. Id. McDonald was shot by a co-defendant because he owed that supplier money. Id. McDonald made money from redistributing drugs over the course of the conspiracy; he also supplied other members of the conspiracy with drugs. Id. This proffer, without the evidence as to the controlled buy, adequately supports McDonald's guilty plea. Thus, there was no constitutional error.

### 6. Alleged Error Due to Court's Failure to Specifically Address McDonald

McDonald claims that the court erred because it did not ask McDonald to freely explain his conduct that caused him to plead guilty. "In determining the factual basis of a plea, the court may find a factual basis in anything that appears on the record, and the court need not personally address the defendant if the factual basis is otherwise established." Fed Proc. § 22:925; see United States v. Thomas, 367 F.3d 194, 197 (4th Cir. 2004). Rather, factual basis may come from any part of the record. DeFusco, 949 F.2d 114 at 120. McDonald pled guilty on the record. He further admitted guilt to the probation office, as is noted in the PSR. The government proffer, even without evidence as to the alleged controlled buy, supports the guilty plea. As such, the court committed no error entitling McDonald to relief.[8]

---

[8]McDonald's reliance on United States v. Tucker, 425 F.2d 624 (4th Cir. 1970) is misplaced. The defendant in Tucker repeatedly insisted that he was innocent on the record. Id. at 629. McDonald's insistence that he is innocent has come only after a guilty plea and a sentence which included a benefit for acceptance of responsibility under the sentencing guidelines.

-25-

*7. Alleged Cumulative Prejudice Resulting from Plea Colloquy*

McDonald finally argues that the errors in his plea colloquy collectively amount to constitutional and jurisdictional harms sufficient to provide him relief. For the reasons stated in the foregoing sections, McDonald's claim fails. McDonald cannot demonstrate prejudice as to any of his claims; rather an analysis of McDonald's claims demonstrates that even taking the facts in the light most favorable to his claims, McDonald was able to weigh the risks and benefits of pleading guilty. He was similarly informed of the consequences flowing from his guilty plea. Given the weight of the government's evidence against him, McDonald chose to plead guilty. Such plea was adequately investigated by the court and supported by the record. As such, McDonald's claims fail.

### C. Alleged Legal Errors in Sentencing

McDonald argues that the court (1) failed to give meaningful consideration to sentencing factors delineated in 18 U.S.C. § 3553(a); (2) violated McDonald's constitutional rights because there was no jury finding as to drug amount; and (3) alleged prejudice in the form of a longer term of imprisonment. The government argues that both of these arguments have been procedurally defaulted. McDonald's arguments are considered in turn.

*1. Consideration of Factors Under 18 U.S.C. § 3553(a)*

McDonald claims that the court failed to give sufficient consideration to mitigating factors in considering McDonald's sentence. He further claims that the court should not have given the sentencing guidelines a presumption of reasonableness.

Once an issue has been fully considered and decided by the court of appeals, a defendant cannot re-litigate that issue before the district court under § 2255. Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976). McDonald's counsel argued on direct

appeal that the court failed to give sufficient consideration to sentencing factors under 18 U.S.C. § 3553(a) and that the sentencing guidelines should not be accorded a presumption of reasonableness. See Brief of Petitioner, United States v. McDonald, No. 05-5149, 2006 WL 690803 (4th Cir. March 3, 2006); United States v. McDonald, 191 F.App'x 224 (4th Cir. 2006). The Fourth Circuit rejected both of McDonald's arguments, noting that the district court considered § 3553(a) factors and that McDonald's sentence was reasonable. McDonald, 191 F.App'x at 224. The Fourth Circuit further held that the sentencing guidelines presumption of reasonableness is appropriate. Id. at 224, N. *. Thus, McDonald's claims have been previously considered and rejected. He cannot re-litigate them here.

### 2. Error in Sentencing Because of Lack of Jury Determination as to Drug Amount

McDonald argues, again, that his sentence is inappropriate because there was no jury determination as to the drug amount attributable to him. In this iteration of his argument, he highlights that the court considered the special finding that the conspiracy distributed or intended to distribute 1.5 kilograms of cocaine base. McDonald failed to raise this argument on direct appeal, and the government argues that it is procedurally defaulted. McDonald argues in reply that any procedural default is excused by prior ineffective assistance of counsel, which harmed McDonald by causing him to receive a higher sentence.

A collateral attack under § 2255 may not substitute for an appeal. As previously discussed, claims regarding trial errors that could have been, but were not raised, on direct appeal are barred from review under § 2255, unless the defendant shows cause for the default and actual prejudice resulting from such errors, or demonstrates that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack. See Mikalajunas, 186 F.3d at 492-93. Ineffective assistance of counsel may be cause for default; implicating the

-27-

<u>Strickland</u> reasonableness and prejudice standard. <u>Id</u>. at 493. McDonald's claims are procedurally defaulted because he cannot establish ineffective assistance of counsel with regard to a failure to raise claims either regarding the court's consideration of the sentencing factors or the lack of a jury determination as to drug amount.

Appellate counsel has no constitutional duty to raise on appeal every non-frivolous issue requested by defendant "if counsel, as a matter of professional judgment, decides not to present those points." <u>Jones v. Barnes</u>, 463 U.S. 745, 751 (1983). As noted, counsel Henter appealed on behalf of McDonald. Henter's decision to raise other grounds is a strategic question subject to deference. Thus, McDonald cannot demonstrate that counsel performed unreasonably. McDonald was not entitled to a jury determination as to the quantity of drugs set forth in the special finding in the indictment because McDonald pled guilty to the indictment in open court, and waived any right to a jury trial on any issue. Additionally, McDonald cannot demonstrate prejudice, as his argument fails as a matter of law. As is explained in section II.A.5, <u>supra</u>, McDonald received a sentence that fell within the statutory range for 21 U.S.C. § 841 without any enhancements as to drug weight. Thus, there was no ineffective assistance of counsel and McDonald's argument is defaulted.

### 3. Alleged Prejudice to McDonald in Form of Longer Sentence

Finally, McDonald argues that his claims in II.C.1 & 2 together demonstrate that he suffered prejudice by receiving a longer sentence. As noted, McDonald's decision to forgo a jury trial was knowing and intelligent. His sentence is proper given the information disclosed to him. Thus, he cannot demonstrate prejudice entitling him to relief.

### D. Assistance of Counsel at Sentencing

McDonald next argues that he was denied effective assistance of counsel at sentencing

-28-

because his counsel allegedly failed to (1) move for various downward adjustments under the sentencing guidelines; (2) contest the drug amount; (3) introduce medical records; and (4) object to McDonald's sentence, thus creating, collectively (5) prejudice to McDonald.

### 1. Alleged Failure to Seek Downward Adjustments

McDonald raises a variety of claims regarding downward adjustments under the sentencing guidelines to which he believes he was entitled. First, McDonald rehashes his argument that his counsel should have sought to assure such a decrease through a plea agreement. McDonald cannot establish ineffective assistance as to this claim because he cannot establish that his counsel acted unreasonably. As previously was discussed, McDonald's counsel was not ineffective for failing to negotiate a plea agreement.

Second, McDonald argues that his counsel was ineffective for failing to seek an additional downward adjustment under U.S.S.G. § 3E1.1(b), the third level of decrease in sentencing for acceptance of responsibility. McDonald did, in fact, receive a two-point adjustment under the sentencing guidelines for acceptance of responsibility. McDonald now argues that his counsel should have tried to compel the government in court to give him an additional downward adjustment. McDonald premises this argument on the belief that the government was wrong to deny him such an additional decrease.

McDonald cannot establish that his counsel was unreasonable for failing to request an additional decrease. Rather, it is in the government's discretion as to whether to request that the court enter a third level decrease in sentence for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(b). A defendant may receive such an adjustment "upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct" by agreeing to plead guilty. U.S.S.G. § 3E1.1(b).

-29-

McDonald argues that the government had an improper motive for refusing to request the additional downward adjustment, because the government allegedly refused to seek an additional decrease unless McDonald agreed to cooperate with the government. However, the government is permitted to consider whether a defendant has assisted in fact-finding or provided testimony in determining whether to seek the additional adjustment. See U.S. Sentencing Guidelines Manual § 3E1.2 appl. n.1. Given that the government's alleged conduct is reasonable based on the plain text of the United States Sentencing Guidelines, McDonald's counsel was not unreasonable for failing to seek a motion compelling the government to seek an additional downward adjustment. Additionally, given that McDonald does not appear to have cooperated with the government, he would not have had a strong case for compelling the government to seek an additional downward adjustment.

Third, McDonald cannot make a case that he should have received a downward adjustment for having played a minor role in the drug conspiracy, pursuant to U.S.S.G. § 3B1.2, given that McDonald had a relationship with the drug supplier, and supplied drugs to others. Thus, McDonald's counsel did not act unreasonably. Further, McDonald cannot demonstrate prejudice as he lacked grounds to compel the government to seek a further downward adjustment and thus, he would not have been successful.

### 2. Alleged Failure to Contest Drug Amount

McDonald next argues that his counsel was ineffective because at the sentencing hearing, the court referenced the special finding that the conspiracy had distributed over 1.5 kilograms of cocaine base. McDonald's counsel was not unreasonable, as by the time of the sentencing hearing, McDonald had pled guilty. Thus, McDonald's counsel was not unreasonable for failing to contest facts that McDonald had, at that point, admitted.

-30-

### 3. Alleged Failure to Introduce Medical Records

McDonald next argues that his counsel was ineffective for failing to introduce medical records showing McDonald's victimization at the hand of a co-defendant. In this case, McDonald's counsel made that argument in both a sentencing memorandum and at sentencing hearing suggesting that McDonald should receive a lower sentence because he had been shot by a co-defendant. See McDonald's Bench Memorandum at Sentencing, Dkt. #189; Exhibit Q at 10-11. Thus, McDonald's counsel placed the issue squarely before the court, and the court considered the issue. Exhibit Q at 12. McDonald's counsel is entitled to make strategic decisions, based on time allocation regarding what evidence to put before the court. Thus, McDonald cannot demonstrate that his counsel acted unreasonably. Further, given that McDonald was shot because of his role in the drug conspiracy, McDonald cannot demonstrate that the addition of medical records would have changed the court's view of his prior injury. Thus, McDonald cannot demonstrate prejudice.

### 4. Failure to Make Various and Sundry Objections

McDonald next argues that his counsel was ineffective at the sentencing hearing for failing to object as to the lack of jury determination as to drug amount and to sentencing based on higher statutory ranges for cocaine base. McDonald's argument fails because, as set forth, he was informed of his right to a jury determination and waived it by pleading guilty. Further, even had there been a lack of disclosure as to the jury determination, such error was harmless because McDonald's sentence fell within the statutory range for a violation of 21 U.S.C. § 841(a)(1), i.e. the charge absent a determination as to drug amount.

McDonald does not point to a single case successfully challenging the cocaine base/cocaine disparity in sentencing. Given the failure to succeed in this, McDonald cannot

-31-

show that his counsel was unreasonable for pursuing a futile line of argument. Further, McDonald suffered no prejudice.

### 5. Prejudice to McDonald

McDonald argues that had counsel acted as he described, the cumulative effect would have been a lower sentence. However, McDonald's arguments fail independently because they are legally insufficient to state a claim. Their cumulative effect remains legally insufficient to state a claim. Thus, his final claim fails.

### E. Assistance of Counsel on Direct Appeal

Finally, McDonald argues that his counsel was ineffective for failing to argue on direct appeal that McDonald's guilty plea was involuntary and unintelligent because of the previously asserted errors in the plea colloquy. The <u>Strickland</u> performance and prejudice test is applicable for counsel on the appeals level. <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986). As previously noted, appellate counsel has no constitutional duty to raise every non-frivolous issue requested by defendant. <u>Jones</u>, 463 U.S. at 751. McDonald cannot establish unreasonable performance or prejudice, because his arguments that his plea was involuntary and unintelligent fail as a matter of law for all of the reasons stated in sections II.A and II.B, <u>supra</u>.

### IV. Conclusion

For the foregoing reasons, the court will grant respondent's motion for summary judgment. An appropriate order will be entered this day.

**ENTER**: This 14th day of July, 2009.

_Norman K. Moon_
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

-32-